# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**              CRIMINAL ACTION

**VERSUS**

**JOHNNY GRANT**                          NO: 17-00019-BAJ-EWD

## RULING AND ORDER

Before the Court is the **Motion to Suppress (Doc. 25)** filed by Defendant, Johnny L. Grant, seeking to suppress certain statements and evidence recovered in a car and at an apartment. The United States opposes the motion. (Doc. 29). The Court held oral argument on August 10, 2018. For the reasons that follow, the motion is **DENIED**.

    I.    **BACKGROUND**

Defendant is charged via a three-count indictment with (1) possession with intent to distribute 100 grams or more of heroin, 500 grams or more of a substance containing a detectable amount of methamphetamine, hydrocodone, oxycodone, and alprazolam in violation of 21 U.S.C. § 841(a)(1); (2) possession of firearms in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A); and (3) possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 2 at pp. 1–2).

According to the testimony of Detective John David Belcher, Defendant first came under surveillance when the Baton Rouge Police Department ("BRPD") was told by three different confidential sources that Defendant was selling drugs out of an

apartment,[1] identified in the application for a search warrant as 5431 Essen Lane Building 5445 Apartment 7. (Doc. 25-4 at p. 1). Detectives with the BRPD drove Confidential Source #3 ("CS3") by the building, and he identified the apartment where Defendant was allegedly staying, which was placed under surveillance. (Doc. 25-2 at p. 2). At the direction of detectives, CS3 placed a call to Defendant on the evening of January 31, 2017 and arranged to purchase $1,500 worth of methamphetamine in the parking lot of a local business.[2] (*Id.*). Shortly after this phone call, detectives observed Defendant leave the apartment, enter a 2015 Audi Q7, and exit the apartment complex. (*Id.*)

After making a few stops along Essen Lane, Defendant entered the parking lot. (*Id.*). CS3 placed another call to Defendant to confirm that he was there for the drug deal. (*Id.*). At this point, detectives stationed in the parking lot activated their lights and approached the car wearing ballistic vests with the word "POLICE." (*Id.*). Officer Jeremiah Ardoin testified that he saw Defendant stuffing items into the pocket of his sweatshirt and in the car. Believing that Defendant was trying to conceal evidence or arm himself, the detectives removed him from the vehicle. (Doc. 25-2 at p. 2). Detective Ardoin testified that as he removed Defendant from the vehicle, three plastic baggies believed to contain methamphetamine fell out of his

---

[1] It appears that the Department was not owned by Defendant, and it is unclear how often he stayed there; however, the United States does not raise the issue of standing regarding Defendant's expectation of privacy.

[2] The phone call was not recorded, but was monitored by BRPD detectives.

2

jacket. Defendant was read his *Miranda* rights and placed under arrest. (*Id.*). There is no dashcam or bodycam video of this encounter. (Doc. 25-1 at p. 2).

Detectives then searched Defendant's body and found what they suspected was heroin in his pocket. (*Id.*). Detectives claim that they saw a pistol and a large amount of cash in the center console of the car in plain view. (*Id.*). Detectives conducted a further search of the vehicle, which Defendant claims belonged to his brother. (*Id.*). Detectives did not obtain a warrant to search the vehicle. (*Id.*).

Based on information from the confidential sources and the stop and subsequent arrest of Defendant, detectives applied for and received a search warrant for what was identified in the search warrant as 5431 Essen Lane, Building 5445, Apartment 7. (Doc. 25-2 at p. 3; Doc. Doc. 25-3). The warrant application is time stamped at 9:13 pm and the judge signed the warrant at 9:20 pm. (Doc. 25-4 at pp. 3–4). However, multiple incident reports generated in the days following the search state that that at "2030 hours" (8:30 pm) police executed the search warrant. (*See* Doc. 25-2 at p. 1). Detective Belcher explained in his testimony at the hearing, *sub judice*, that any discrepancy in the paperwork is due to "human error," and that the earlier time in the incident reports are typos. He testified that they had to wait for the East Baton Rouge Parish Sheriff's Office ("EBRPSO") to execute the warrant, and that he checked to make sure the warrant had a no-knock provision[3] before entering the house.

---

[3] A no-knock provision in a warrant allows entry into the premises without police first knocking and announcing themselves when there are reasonable grounds to expect exigent circumstances would arise when the officers arrive at the door. *See United States v. Banks*, 540 U.S. 31, 36–37 (2003).

Following the issuance of the warrant, detectives with the BRPD and EBRPSO entered the apartment. (Doc. 25-2 at p. 3). The search turned up over 48 pounds of suspected methamphetamine, over 500 grams of heroin, and smaller amounts of other drugs. (*Id.*).

## II. LEGAL STANDARD

Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)). Defendant also bears the burden of showing that the execution of a search warrant is invalid. *See United States v. Kimbrough*, 69 F.3d 723, 728 (5th Cir. 1995); *United States v. Vigo*, 413 F.2d 691, 693 (holding that the defendant bears the burden of showing that a daylight warrant was executed before daylight). However, in cases where a warrantless search occurs, the United States bears the burden of proving that the search was valid. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citing *United States v. Castro*, 166 F.3d 728, 733 n.6 (5th Cir. 1999)).

## III. DISCUSSION

**A. Stop**

Defendant first argues that at the time he was stopped, there was no "objective evidence of criminal activity," and that he had committed no traffic violations. (Doc. 25-1 at p. 7).

The stopping of a vehicle is a seizure under the Fourth Amendment. *United States v. Bringham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc) Searches and seizures of motorists are analyzed under the *Terry* frame work. *United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993). Accordingly, the Court must ask whether the stop was (1) "justified at its inception" and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Lopez–Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (quoting *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968)). "Any analysis of reasonable suspicion is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *United States v. Ibarra–Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999).

Detectives had reasonable suspicion to approach the vehicle. CS3's tips and the subsequent investigation by law enforcement officers justified the police approaching the car and ordering Defendant out of the vehicle. Police had observed the car leave the apartment where drugs were allegedly being sold, they followed it down Essen Lane, and when Defendant pulled into the parking lot where the transaction was to occur, he called CS3 to let him know he was there. When detectives approached the vehicle after ordering Defendant out of it and observed him appearing to stuff items into his pocket, this provided sufficient justification to remove him from the vehicle.

**B. Entry Into The Parking Lot**

For the first time at the hearing, Defendant claimed that the entire operation was tainted because the police had no right to enter the gated parking lot around the apartment complex without a warrant.

The Court rejects this contention. The police entered through the front gate, parked and observed the apartment complex that Defendant would later leave. They did not approach his apartment. A gated parking lot in an apartment complex is not an area where a person has a reasonable expectation of privacy. *Cf. Olivier v. United States*, 466 U.S. 170, 178 (1984) (noting that neither fences nor "No Trespassing" signs create an expectation of privacy in "open fields").

**C. Search of the Vehicle**

"If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." Maryland v. Dyson, 527 U.S. 465, 467 (1999) (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)).

The officers had probable cause to arrest Defendant when a baggie believed to hold methamphetamine fell out of his pocket and onto the ground. Officer Ardoin testified that he saw Defendant stuffing items around the console of the car when he was approached. Based on Officer Ardoin's testimony and the detectives' knowledge that Defendant had agreed to meet up with CS3 for to complete a drug transaction, probable cause existed to believe there were additional drugs in the car. Accordingly, the search of the vehicle was lawful.

**D. Search of the Apartment**

Defendant advances three arguments in his briefing why the search of the apartment was unlawful: (1) the warrant is facially deficient because it contains two municipal addresses; (2) the warrant omitted that CS3 arranged for the drug buy at the direction of the BRPD; (3) the police reports of the incident indicate that police searched the apartment an hour before the warrant was signed.

*1. Facially Invalid Address*

Defendant argues that the address on the warrant "5431 Essen Ln Bld 5445 Apt 7" is a facially invalid because it contains two municipal addresses. (Doc. 25-4 at p. 1). Therefore, Defendants claim, the warrant fails the particularity requirement of the Fourth Amendment.

An error in the description of a premises to be searched is not automatically fatal to the validity of a search warrant," and the Fifth Circuit has upheld searches where the wrong street address and wrong numerical address was given. *United States v. Avarello*, 592 F.2d 1339, 1344 (5th Cir. 1979). "[T]he description must be sufficient to enable the executing officer to locate and identify the place to be searched with reasonable effort and without reasonable probability that another premises might mistakenly be searched." *Id.*

Here, the circumstances of the case militate against finding the warrant facially invalid because it contained two municipal addresses. The apartment to be searched had been identified by a confidential source and one of the detectives executing the warrant had seen Defendant leave the apartment that was in fact

7

searched. Under these circumstances, "there was no possibility the wrong premises would be searched." *United States v. Gordon*, 901 F.2d 48, 50 (5th Cir. 1990) (quoting *United States v. Burke*, 784 F.2d 1090, 1093 (11th Cir. 1986)). Further, it appears that the detectives acted in good faith and that any error was merely technical. *See Id.* ("It obviously could not serve any law enforcement, or other, purpose to intentionally state a nonexistent address on a warrant plainly intended to be executed at the specific place it was executed and for which there was probable cause to search.").

### *2. Failure to Disclose Information about Confidential Sources*

Defendant further claims that the warrant omitted relevant information because it states only that Detectives received a tip that Defendant would be delivering drugs. It did not indicate that the Detectives had instructed CS3 to set up the transaction.

*Franks v. Delaware*, 438 U.S. 154 (1978) establishes the standard for challenging the veracity of statements contained in a search warrant. To be entitled to a *Franks* hearing, a Defendant must "make a substantial preliminary showing" that (1) the affiant knowing and intentionally, or with a reckless disregard for the truth, made a false statement in the affidavit and that (2) the remaining portion of the affidavit is insufficient to support a finding of probable cause. *United States v. Brown*, 298 F.3d 392, 395 (5th Cir. 2012). "An omission may amount to improper government conduct only if the omission is material and the defendant shows that the affiant excluded material information 'with the intent to mislead the magistrate.'"

8

*United States v. Torres*, 694 F. App'x 937, 944 (5th Cir. 2017) (unpublished) (quoting *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995)).

Defendant has not met his burden of showing that he is entitled to a *Franks* hearing. Even assuming that the fact that CS3 set up the drug deal at the suggestion of the BRPD is material, the inclusion of this information in the warrant would only strengthen the application, not weaken it.

### 3. *Time of the Warrant Execution*

Defendant also claims that the police may have entered the apartment before they received the warrant. In support of this argument, Defendant points to inconsistencies in BRPD's paperwork. Detectives submitted the warrant at 9:13 pm and the judge signed it at 9:20 pm. (Doc. 25-4 at pp. 3–4). However, multiple incident reports state that that at "2030 hours" (8:30 pm) police executed the search warrant. (*See* Doc. 25-2 at p. 1).

The Court finds that the paperwork and the credible testimony of the Detectives consistently establish that the warrant was signed before it was executed. That the wrong time was written in several reports following the execution of the warrant does not invalidate the warrant. *Cf. Alegria v. Quarterman*, No. 4:07-CV-130-Y, 2008 WL 440306, at *6 (N.D. Tex. Feb. 19, 2008) (finding no ineffective assistance of counsel for failure to challenge a warrant where the magistrate judge testified he wrote the wrong time on the affidavit). A discrepancy of one hour in paperwork completed after the search does not create sufficient doubt that the search occurred prior to the issuance of the warrant. Taking the evidence as a whole, the

9

Court finds that the United States established that the search occurred pursuant to a valid warrant.

IV. CONCLUSION

**Accordingly,**

**IT IS ORDERED** that the motion to suppress (Doc. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that the pretrial conference in this matter is hereby set for October 5, 2018 at 2:00 p.m., in Chambers and that the jury trial in this matter is hereby set for October 15-16, 2018 at 8:30 a.m. in Courtroom 2. Counsel shall report to Chambers at 8:30 the morning of trial.

Baton Rouge, Louisiana, this 13th day of September, 2018.

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**